IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BELL TEXTRON INC., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNITED LOCAL 218, U.A.W. and )<br>INTERNATIONAL UNION, UNITED )<br>AUTOMOBILE, AEROSPACE AND )<br>AGRICULTURAL IMPLEMENT )<br>WORKERS OF AMERICA, )<br>)<br>    Defendants. ) | Civil Action No. _____ |

**COMPLAINT FOR BREACH OF CONTRACT
AND DECLARATORY JUDGMENT**

Plaintiff, Bell Textron Inc., ("Bell"), by its attorneys, submits the following complaint against Defendants, United Local 218, U.A.W. ("Local 218") and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") (collectively, "Defendants").

**STATEMENT OF THE CASE**

1.  This is an action for breach of contract and declaratory judgment. The parties to this action are signatories to a collective bargaining agreement, effective June 14, 2021 through June 22, 2025 (the "CBA"). The CBA provides that the arbitrator selected by both parties may decide "unadjusted" "grievances."

2.  The parties also agreed to a Memorandum of Understanding #357 (the "MOU"), which governed the terms of a voluntary separation program that Bell effected in 2021.

3.  Pursuant to the MOU, Defendants expressly agreed that "there shall be no liability on the part of the Company except as provided in this MOU, and Defendants further expressly

"agree[d] neither to accept nor to process any grievance which may arise as a result of or in connection with this MOU." (Exhibit B, MOU at 2.)

4. Notwithstanding their express commitments to the contrary, Defendants filed and processed a grievance in connection with the MOU. In their grievance, Defendants alleged that Bell permitted one employee to stay beyond the negotiated separation deadline in the MOU. Defendants asserted that pursuant to the parties' negotiations (i.e., the MOU), all employees participating in the voluntary separation package should have separated from Bell by December 10, 2021, but that one employee did not separate until January 6, 2022.

5. Defendants filed that grievance at step three of the grievance process in the CBA and subsequently advanced that grievance to arbitration over Bell's objection that the grievance and the parties' dispute is not arbitrable under the plain language of the MOU.

6. Bell brings this action for breach of contract against Defendants because Defendants breached their obligation under the MOU. Specifically, despite their agreement to the contrary, Defendants both filed and processed the underlying grievance.

7. Furthermore, and given Defendants' insistence on proceeding in arbitration, Bell seeks a declaratory judgment that: (1) Defendants breached the MOU by filing and processing a grievance which arose as a result of or in connection with the MOU; (2) the parties have not delegated the question of whether the underlying dispute is arbitrable to the arbitrator, and thus, the Court should decide that question; and (3) the parties have agreed that the present dispute is not arbitrable.

## PARTIES

8. Bell is a Delaware corporation with its principal place of business in Fort Worth, Texas.

9. Bell employs approximately 7,750 employees and is engaged in an industry affecting commerce within the meaning of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301").

10. Bell is an employer within the meaning of Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2), as amended by the Labor Management Relations Act of 1947 ("LMRA").

11. Defendants are labor organizations whose members are employees of an employer engaged in interstate commerce for the purpose of 29 U.S.C. §§ 152(5) and 185(b).

12. At all relevant times, Greg Athens, Local 218 Chairman, is, and has been, an agent of Defendants.

13. Defendants collectively are the sole bargaining agent of all production and maintenance employees at Bell's plants in Tarrant and Dallas Counties and a portion of the Alliance Airport located in Denton County, as more fully set out in the CBA, for the purpose of collective bargaining with regard to wages, hours, and other terms and conditions of employees.

## JURISDICTION AND VENUE

14. This is an action for breach of contract and declaratory judgment based on a labor contract and a collective bargaining agreement. Jurisdiction is, therefore, conferred upon this Court by Section 301 of the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185, 28 U.S.C. § 1331, through 28 U.S.C. § 1337(a) (action arising under federal law regulating commerce), and 28 U.S.C. § 2201.

15. Local 218 has an office and place of business at 98 West Hurst Blvd., Hurst, Texas 76053. Local 218 is affiliated with the UAW.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 185(a), because Local 218 has a principal place of business and is subject to personal

jurisdiction in this district, because Defendants' duly authorized officers or agents are engaged in representing or acting for their employee members within this District, and because a substantial part of the events giving rise to these claims occurred within this District.

## FACTS

**A.     The Collective Bargaining Agreement Between the Parties.**

17.     Bell and Defendants are, and at all relevant times have been, parties to the CBA. The CBA covers the terms and conditions of employment and the nature of the relationship between them and runs from June 14, 2021 through June 22, 2025. The parties entered into the CBA on June 14, 2021. (*See* Exhibit A, Excerpts from CBA.)

18.     The CBA contains grievance and arbitration procedures. Under the grievance procedure, Defendants may file a policy grievance, which is processed at the "third step" of the grievance process. (Ex. A, Excerpts from CBA at Art. V, Sect. 20).

19.     If the grievance is not settled at that step, "the matter may be appealed as outlined under Arbitration." (Ex. A, Excerpts from CBA, Art. V, Sec. 19.)

20.     Under the arbitration provision, "[i]f a grievance remains unadjusted after the final step provided in the grievance procedure," it may be advanced to arbitration. (Ex. A, Excerpts from CBA, Art. VI, Sec. 35.A). The arbitration provision further provides that once an arbitrator is selected, he shall "hear such grievance." (Ex. A, Excerpts from CBA, Art. VI, Sec. 36.)

21.     Under the CBA, a grievance is a prerequisite to the arbitrator having any jurisdiction to decide any dispute. (Ex. A, Excerpts from CBA, Art. VI, Sec. 36.)

22.     The CBA provides that within 30 days of the parties' receipt of a panel of seven arbitrators from the Federal Mediation and Conciliation Services ("FMCS"), the parties will

4

"meet at a mutually convenient time and each party shall have the right to strike three names" from the FMCS panel. (Ex. A, Excerpts from CBA, Art. VI, Sec. 36.)

23. The CBA further provides that "[i]f either party does not exercise their right to strike Arbitrators from the list during this thirty (30) day period, the other party may select the Arbitrator and proceed with the case immediately." (Ex. A, Excerpts from CBA, Art. VI, Sec. 36.)

24. The CBA also limits the arbitrator's authority to ruling on disputes pertaining to the interpretation or application of the CBA and precludes the arbitrator from adding to, subtracting from, or modifying any of the terms of the CBA, as follows:

> The Arbitrator shall be empowered to rule on all disputes pertaining to the interpretation or application of this Agreement. He shall have no power to add to or subtract from or modify any of the terms of this Agreement or any other Agreement made supplementary hereto. He shall not establish or change any basic wage rate already in effect. He shall have no power to interpret any State or Federal Statute when the compliance or non-compliance therewith shall be involved in the determination of a grievance. Any case appealed to Arbitration which the Arbitrator decides is not arbitrable under this Agreement shall be referred back to the parties.

(Ex. A, Excerpts from CBA, Art. VI, Sec. 37.)

**B.      The Parties Negotiated a Voluntary Separation Package Offer.**

25. In June 2021, following negotiations and bargaining between the parties, the parties entered into a labor contract, entitled Memorandum of Understanding #357 (i.e., the MOU). (*See* Exhibit B, MOU.)

26. Pursuant to the MOU, the parties agreed to a Voluntary Separation Package Offer ("VSP"), in which Bell offered employees jointly represented by Defendants who met certain eligibility criteria the opportunity to elect to voluntarily separate from the company and receive certain separation pay and benefits in exchange for signing a release of any claims against Bell,

5

waiving seniority rights, and permanently ending the employment relationship with Bell. (Ex. B, MOU at 1.)

27. Under the terms of the MOU, most employees who elected to participate in the VSP were to begin voluntarily separating from employment with Bell on August 13, 2021. However, Bell retained the exclusive right and sole discretion to stagger exit dates in order to backfill critical positions and train replacements in critical areas (for up to 120 days). (Ex. B, MOU at 1.)

28. The parties further expressly agreed in the MOU that "there shall be no liability on the part of the Company except as provided in this MOU." (Ex. B, MOU at 2.)

29. Further, Defendants expressly agreed "neither to accept nor to process any grievance which may arise as a result of or in connection with this MOU." (Ex. B, MOU at 2.)

**C.    Despite Its Express Commitment in the MOU, Defendants Filed a Grievance.**

30. On January 27, 2022, Defendants filed and processed a grievance relating to the VSP. In the grievance, Defendants alleged:

> The Union has become aware the Company let a Union covered employee stay beyond the UAW Local 218 negotiated voluntary separation package deadline. The separation date of August 13, 2021 and 120 days beyond is the maximum. All VSP employees should have exited at the latest on December 10, 2021. This employee did not exit until January 6, 2022.

(Exhibit C, Grievance.)

31. In their grievance, Defendants requested that Bell "make the Union whole." (Ex. C, Grievance.)

32. Defendants filed the grievance as a policy grievance under the CBA, which is processed beginning at step three of the grievance procedure contained in the CBA. (Ex. C, Grievance; Ex. A, Excerpts from CBA at Art. V, Sec. 20.)

6

33. On February 25, 2022, Bell denied the grievance and specifically objected to the arbitrability of the matter, noting the MOU provided that disputes relating to the MOU are not arbitrable. (Exhibit D, Addendum to Third Step Disposition.)

34. Defendants advanced the grievance to arbitration by providing notice via letter from Greg Athens to Bell on February 23, 2022, and requesting an arbitration panel from FMCS by email from counsel on February 25, 2022. (Exhibit E, Arbitration Letter; Exhibit F, Email Exchange with FMCS.)

35. On February 25, 2022, Bell responded to the notice of intent to proceed to arbitration, and Bell set forth its position that the grievance is not arbitrable. In its response, Bell explained, "Under the clear and unambiguous terms of the Voluntary Separation Package MOU, the parties have specifically agreed that disputes relating to the MOU are not arbitrable; and the Company does not consent to submit this grievance to arbitration. . . . The Company's position, therefore, is that [the] subject matter of the dispute is not arbitrable. . . ." (Ex. D, Addendum to Third Step Disposition.)

36. By filing the grievance and taking it up with Bell and by advancing the grievance to arbitration, Defendants processed the grievance in violation of their commitment in the MOU not to process any grievances which arose as a result of or in connection with the MOU.

37. Bell again objected to the arbitrability of the matter in correspondence with Defendants' counsel and FMCS. (Ex. F, Email Exchange with FMCS.)

38. FMCS recognized the parties' dispute over the arbitrability of the matter, but FMCS took the position that "our regulations expressly forbid us from considering any claim that a dispute is (or is not) arbitrable. 29 CFR § 1404.10." (Ex. F, Email Exchange with FMCS.)

39. FMCS also noted that: "In Section 36, the agreement provides as follows: 'If either party does not exercise their right to strike Arbitrators from the list during this thirty (30) day period, the other party may select the Arbitrator and proceed with the case immediately. This paragraph is for the purpose of preventing either party from technically barring Arbitration.' Both parties therefore need to ensure they make arrangements to strike within the 30-day period; otherwise, FMCS will have no choice but to appoint the arbitrator selected by the party willing to strike." (Ex. F, Email Exchange with FMCS.)

40. Bell continued to object to the arbitrability of this matter. (Ex. F, Email Exchange with FMCS.)

41. Bell further objected to the arbitrator deciding the arbitrability issue, noting that because the parties have not agreed that an arbitrator may decide whether or not the dispute is arbitrable, the question of arbitrability should be decided by a court, not an arbitrator. (Ex. F, Email Exchange with FMCS.)

42. However, given FMCS's provision of a panel and the language in the CBA that if a party does not strike the panel within 30 days, that party waives its right to participate in the selection of the arbitrator, Bell struck the panel under protest. (Ex. F, Email Exchange with FMCS.)

43. Ultimately, Arbitrator Edward B. Krinsky was selected. An arbitration hearing is scheduled for this matter on October 21, 2022.

## COUNT I
## BREACH OF CONTRACT

44. Bell repeats and re-alleges the allegations made in paragraphs 1 through 43 above as if fully set forth herein.

45. The MOU is a valid and enforceable contract between the parties that was in effect during all relevant times herein.

46. In the MOU, Defendants agreed not "to accept [or] to process any grievance which may arise as a result of or in connection with this MOU." (Ex. B, MOU at 2.)

47. As described above, Defendants breached its contractual obligations in the MOU by filing and processing the underlying grievance in this matter, which arose as a result of or in connection with the MOU.

48. As a direct and proximate result of Defendants' breach, Bell suffered substantial irreparable harm and damages (including, but not limited to, monetary damages associated with processing and defending the underlying grievance and arbitration demand), in an amount to be established at the time of trial.

## COUNT II
## DECLARATORY JUDGMENT

49. Bell repeats and re-alleges the allegations made in paragraphs 1 through 48 above as if fully set forth herein.

50. This is an action for a declaratory judgment pursuant to 29 U.S.C. § 185 and 28 U.S.C. §§ 2201 & 2202, for the purpose of determining a question of actual controversy between the parties, namely, whether Defendants breached the MOU by processing the underlying grievance and whether the current dispute between the parties is arbitrable given Defendants' agreement that they would "neither [] accept nor [] process any grievance which may arise as a result of or in connection with this MOU." (Ex. B, MOU at 2.)

51. Bell is entitled to a determination and adjudication by the Court of the rights and liabilities of the parties with respect to their labor contract, i.e., the MOU.

52. Nowhere in the MOU, or elsewhere, have the parties agreed that an arbitrator shall decide whether or not this dispute (or any other) is arbitrable.

53. Nowhere in the MOU, or elsewhere, have the parties agreed to arbitrate this or any other dispute involving a grievance which arose as a result of or in connection with the MOU. To the contrary, a properly filed grievance is a prerequisite for arbitration under the parties' CBA, and in the MOU, Defendants affirmatively agreed "neither to accept nor to process any grievance which may arise as a result of or in connection with this MOU." (Ex. B, MOU at 2.)

54. The Court should issue a declaration that (1) Defendants breached the MOU by filing and processing a grievance that arose as a result of or in connection with the MOU; (2) the parties have not delegated the question of arbitrability to the arbitrator because there is no "clear[] and unmistakabl[e]" agreement to do so; and (3) the underlying dispute is not arbitrable because a grievance is a prerequisite to the arbitrator having any jurisdiction to decide any dispute and, under the terms of the MOU, Defendants "agree[d] neither to accept nor to process any grievances which may arise as a result of or in connection with this MOU."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Bell Textron Inc. respectfully requests entry of judgment in its favor against Defendants and further requests that this Court:

    a. Grant judgment in Bell's favor on its breach of contract claim because Defendants breached the MOU by filing and processing the underlying grievance;

    b. Declare that the issue of arbitrability is for the Court to decide not the arbitrator;

    c. Declare that the underlying dispute is not arbitrable;

    d. Award Bell monetary damages in an amount to be determined at trial;

  e. Award Bell its costs and disbursements; and

  f. Award Bell such other and further relief as the Court may deem just and proper.

DATED: September 29, 2022.

          Respectfully submitted,

          SEYFARTH SHAW LLP,

       By: s/ John P. Phillips
          John P. Phillips
          Texas Bar No. 24083659
          700 Milam Street, Suite 1400
          Houston, Texas 77002
          Telephone: 713-225-2300
          Facsimile: 713-225-2340
          jphillips@seyfarth.com

          Jay K. Rutherford
          Texas Bar No. 17451200
          JACKSON WALKER LLP
          777 Main Street, Suite 2100
          Fort Worth, Texas 76102
          Telephone: 817-334-7200
          jrutherford@jw.com

          ATTORNEYS FOR PLAINTIFF BELL TEXTRON INC.